UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| *In re:* RICHARD H. FRIEDBERG | No. 3:17-cv-1040 (VAB) |

**RULING AND ORDER ON BANKRUPTCY APPEAL**

Richard H. Friedberg ("Appellant"), *pro se*, appeals two orders of the United States Bankruptcy Court ("Bankruptcy Court"), Notice of Appeal, ECF No. 1.

Mr. Friedberg seeks reversal of the denial of his motions: (1) to compel bankruptcy trustee Melissa Zelen Neier ("Trustee Neier") and the law firm at which she serves as partner, Ivey, Barnum & O'Mara, LLC, to return fees collected for the trusteeship of Mr. Friedberg's 2008 bankruptcy on account of the "financial genocide" of Mr. Friedberg by Trustee Neier, her firm, and the Bankruptcy Court, and (2) to compel bankruptcy Trustee Neier to turn over all books, records, emails, telephone logs, and tax returns associated with his 2008 bankruptcy, *id*. at 10–11; Appellant Reply Brief, ECF No. 10, at 3.

For the reasons set forth below, the Court **AFFIRMS** the Bankruptcy Court's orders.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

In the late 1980s, Appellant was served with an involuntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of South Carolina. *In re Friedberg*, 87 B.R. 3, 5 (S.D.N.Y. 1988); *see also In re Friedberg*, 106 B.R. 50, 51 (Bankr. S.D.N.Y. 1989), *rev'd,* 131 B.R. 6 (S.D.N.Y. 1991); *In re Friedberg*, 119 B.R. 433 (S.D.N.Y. 1990); *In re Friedberg*, No. 91 CIV. 7490 (JFK), 1991 WL 259038, at *1 (S.D.N.Y. Nov. 25, 1991); *In re Friedberg*, 131 B.R. 6 (S.D.N.Y. 1991). The case was transferred to the United

States Bankruptcy Court for the Southern District of New York, with the Honorable Cornelius Blackshear presiding. *In re Friedberg*, 87-bk-10819 (CB); *In re Friedberg*, 106 B.R. 50, 52.

Appellant "responded to [the Chapter 7] petition by voluntarily filing a Chapter 11 petition for reorganization." *In re Friedberg*, 87 B.R. 3, 4. This permitted Appellant to remain as the debtor-in-possession. *Id*. After "efforts to create a reorganization plan failed," *In re Friedberg*, No. 94 CIV. 1569 (JFK), 1995 WL 733636, at *1 (S.D.N.Y. Dec. 12, 1995), Judge Blackshear appointed Joel Lewittes, a former United States Bankruptcy Judge, as bankruptcy trustee. *Id*. Trustee Lewittes negotiated a reorganization plan that largely met with Appellant's approval. *Id*. Appellant objected to the plan's standard of care provision, however, and argued that Trustee Lewittes had "violated his fiduciary duty as bankruptcy trustee . . . ." in creating the provision. *Id*. at 2. Judge Blackshear found no such violation, *Id*. at 1, and a district court affirmed Judge Blackshear's ruling. *Id*. at 4.

In 2008, Appellant filed for Chapter 11 bankruptcy. *In re Friedberg*, 08-bk-51245 (JAM), Dkt. 1, 4; *see also*, *In re Friedberg*, No. 08-51245AHWS, 2009 WL 1292273, at *1 (Bankr. D. Conn. May 8, 2009). Appellant's Voluntary Petition for Bankruptcy listed approximately $11,000,000 in unsecured claims owed to various law firms[1], Georgia Capital, the State of New York Department of Revenue Collection, and the Internal Revenue Service. *Id*., Dkt. 1. Shortly after Appellant's filing, Georgia Capital moved for an examination *duces tecum* under Federal Rule of Bankruptcy Procedure 2004 of Appellant's financial assets and income. FED. R. BANKR. P. 2004. Mot. for Ex Parte Order Directing 2004 Examination Duces Tecum, *Id*., Dkt. 53. Georgia Capital alleged that Appellant owned or controlled nine limited liability corporations,

---

[1] It is likely that some of Appellant's debt to attorneys was related to his prior bankrupcty. *Cf id*., Dkt. 1 at 6 (listing Stuart B. Ratner, Esq. as a creditor); Dkt. 1798 at 6 (listing Attorney Ratner as a prior bankruptcy administrator).

and received roughly $22,000 in monthly social security income and oil royalties, but nevertheless claimed that he had "little or no personal funds with which to pay living expenses." *Id*., Dkt. 53 at 2. Georgia Capital argued that "[i]t is unclear from Debtor's schedules and statements whether Debtor can demonstrate a reasonable likelihood of rehabilitation or propose, confirm and fund a feasible plan of reorganization." *Id*., Dkt. 53 at 2. On February 23, 2009, the Bankruptcy Court granted Georgia Capital's motion. *Id*., Dkt. 59.

On April 3, 2009, Georgia Capital moved the Bankruptcy Court to convert the case from a Chapter 11 to a Chapter 7 liquidation bankruptcy. *Id*., Dkt. 75. Georgia Capital alleged that the Estate was suffering losses and diminishing, that Appellant had failed to file required reports or explain which of his LLCs were funding his monthly expenses, and that Appellant was unlikely to confirm or effectively participate in a plan of reorganization. *Id*., Dkt. 75 at 3–4.[2] In the event that the Court did not convert the case to a Chapter 7 bankruptcy, Georgia Capital moved the court to appoint a Chapter 11 trustee. *Id*., Dkt. 75 at 10.

On February 17, 2010, the Internal Revenue Service moved to convert the case to a Chapter 7 liquidation bankruptcy. *Id*., Dkt. 358. The Bankruptcy Court held a hearing on the issue on March 23, 2010. *Id*., Dkt. On April 28, 2010, the Bankruptcy Court denied the motion to convert the case to a Chapter 7 liquidation, but ordered the United States Trustee to appoint a Chapter 11 trustee. *Id*., Dkt. 413. That day, Diana Adams,[3] United States Bankruptcy Trustee for

---

[2] ECF pagination.

[3] "Ms. Adams was appointed as the Acting U.S. Trustee for Region 2 on April 7, 2006. She served as an Assistant U.S. Trustee in the . . . Program's Manhattan office from 1996 to 2001, and as the Assistant U.S. Trustee . . . in the Brooklyn office from 2001 until her appointment as Acting U.S. Trustee. Previously, she served as a law clerk for the Honorable Cecilia H. Goetz, Bankruptcy Judge [E.D.N.Y.] . . . . Ms. Adams received her law degree from New York University School of Law[.] The U.S. Trustee Program . . . oversee[s] case administration and litigat[es] to enforce the bankruptcy laws." Press Release, U.S. Dept. of Justice, "Diana G. Adams Appointed U.S. Trustee for New York, Connecticut, Vermont" (June 6, 2007), www.justice.gov/archive/ust/press/docs/2007/pr20070606.pdf

the region, appointed Trustee Neier as the trustee for Mr. Friedberg's Chapter 11 bankruptcy case and notified Trustee Neier that she "must obtain a bond in the amount of $50,000 pursuant to 11 U.S.C. § 322." Notice of Appointment of Trustee, *id*., Dkt. 414.

From April 28, 2010 to November 8, 2016, Trustee Neier served as the Chapter 11, and then Chapter 7,[4] bankruptcy trustee for the case. *See* Chapter 7 Trustee's Final Account and Distribution Report, *id*., Dkt. 1798. Her name appears more than 1,400 times on the docket. *Id*. Ms. Neier alleges that she spent more than 1,300 hours on the case. *Id*., Dkt. 908, 1261. She waived her right to collect an individual trustee fee. *Id*., Dkt. 1359 at 4, 20 (showing an alleged entitlement to $81,838.38 under 11 U.S.C. §326(a) and a proposed distribution of $0.00); Dkt. 1798 at 4 (showing an actual payment of $0.00). Trustee Neier's firm, Ivey, Barnum & O'Mara, LLC, was paid just over $600,000 for costs associated with Trustee Neier's work on the bankruptcy[5] and for the firm's representation of Trustee Neier in the nearly dozen district court appeals filed by Appellant. *Id*., Dkt. 908, 126, 1798 at 5; see also, *id*. Dkt. 453, 616, 706, 1122, 1530, 1539, 1592, 1635, 1698, 1693, 1853 [Appellant's appeals of Bankruptcy Court orders during Ms. Neier's tenure as trustee].

---

[4] The Court ordered that the case be converted from a Chapter 11 to a Chapter 7 bankruptcy on June 23, 2010. *Id*., Dkt. 446. Appellant appealed the conversion; his appeals were exhausted on April 26, 2012, and the case was then converted to a Chapter 7 bankruptcy. *Id*., Dkt 1058.

[5] "This case has posed many challenges for the Trustee and her counsel[.] Debtor has filed over 35 motions and objections . . . . and has at least three appeals pending at the District Court level [as of May 15, 2011][.] In addition to the litigation arising out of the Debtor's conduct in the Bankruptcy Court, the Debtor's pre-petition [conduct] spawned a host of litigation matters which the Trustee has monitored where possible. In some instances, the Trustee has been successful [in] persuading litigants to abide by the automatic stay and either cease or forebear from litigating with the Debtor or his wholly owned entities[.] In all, administering this case has required virtually the Trustee's full time [and] attention since her appointment, including her firm's role as counsel to the Trustee." *Id*., Dkt. 908 ¶¶ 9–15; *see also*, *e.g*., Mot. for an Order Enforcing the Automatic Stay and Finding Pradella and Olich in Violation of the Stay, *id*., Dkt 854 (*i.e*., example of Trustee Neier's work product comprising a 12-page motion with 116 pages of exhibits).

On May 3, 2013, Trustee Neier filed a settlement agreement under Federal Rule of Bankruptcy Procedure 9019. Trustee's Mot. to Approve Settlement, *id.*, Dkt. 1359; FED. R. BANKR. P. 9019. On November 11, 2013, following filings and hearings, the Bankruptcy Court approved the settlement. Mem. of Decision and Order Granting Mot. to Approve Settlement Agreement, *Id.*, Dkt. 1535. Appellant appealed the settlement to the district court, *In re Friedberg*, 3:13-cv-01856 (AVC), Dkt. 1, and then to the Second Circuit. *In re Friedberg*, 634 F. App'x 333 (2d Cir. 2016) (summ. order). On February 24, 2016, the Second Circuit affirmed the Bankruptcy Court's order, holding that "the bankruptcy court correctly held that Friedberg lacked standing to oppose the approval of the settlement agreement because he had no pecuniary interest directly and adversely affected by the bankruptcy court's order adopting the settlement." *Id*. at 334. The court explained:

> [T]o have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court. [A] Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid.

*Id*. (internal citations and quotations omitted). The court found that:

> [a]fter accounting for administrative expenses, just over $1.9 million remained for distribution to creditors pursuant to the proposed settlement. This amount was far less than the allowed creditor claims against the estate; the priority claim of Marianne Howatson [Mr. Friedberg's ex-wife] alone was for $2.725 million.

*Id*.

On November 8, 2016, Trustee Neier filed her final trustee's account and report. Chapter 7 Trustee's Final Account and Distribution Report. Appellant objected to Trustee Neier's final accounting. *In re Friedberg*, 08-bk-51245 (JAM), Dkt. 1799.

5

On February 17, 2017, Appellant moved the Bankruptcy Court to compel Trustee Neier and her firm to "disgorge all monies received by her in the case of Richard H. Friedberg[.]." *Id*., Dkt. 1815. On March 27, 2017, Appellant moved the Bankruptcy Court to compel Trustee Neier to turn over all books, records, emails, telephone logs, and tax returns associated with his 2008 bankruptcy. *Id*., Dkt. 1834, 1837 (amended motion to compel). On June 6, 2017, the Bankruptcy Court held a hearing on both motions. *In re Friedberg*, 08-bk-51245 (JAM), Dkt. 1848 [audio recording of hearing]. Appellant, Trustee Neier, and the U.S. Trustee appeared at the hearing. *Id*.

At the hearing, Judge Manning explained that there was "nothing left to do" in the case, as the district court and Second Circuit had affirmed the Bankruptcy Court's order that Mr. Friedberg lacked standing to challenge Trustee Neier's accounting (*i.e.*, which serves as the basis for the fees paid to her firm). *Id*., *see also In re Friedberg*, 634 F. App'x 333. Judge Manning explained that Trustee Neier "did not create records . . ." and that all of the relevant receipts, disbursements, and financial accounts were on the docket. *Id*. Judge Manning reiterated "there are no other records . . . than on the docket." *Id*. At the hearing, Judge Manning denied Appellant's motions to compel. *Id*., Dkt. 1848

On June 21, 2017, Mr. Friedberg appealed the Bankruptcy Court's rulings to this Court. Notice of Appeal, ECF No. 1.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 158(a)(1), United States district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of United States bankruptcy courts. 28 U.S.C. § 158(a)(1). "[I]n bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'ns,*

6

*Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 2021 (2013); *see also Papadopoulos v. Gazes*, No. 14-CIV-3713 (KPF), 2014 WL 3928940, at *4 (S.D.N.Y. Aug. 12, 2014) ("In general, a district court reviews a Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo." (internal quotation marks omitted)).

The Court construes *pro se* filings "liberally" and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that pro se litigants should be afforded "special solicitude" because they are not represented by counsel).

### III. DISCUSSION

Appellant has asked the Court to overturn two orders of the Bankruptcy Court. The Court will first address the motion for disgorgement of fees, and then will turn to the motion to compel the production of bankruptcy records.

> **1. Motion to Compel Trustee Neier and Ivey, Barnum & O'Mara, LLC to Return Payments and Fees to the Estate**

At the June 6, 2017 hearing, Judge Manning found that Appellant lacked standing to challenge the settlement agreement, as affirmed by a district court and the Second Circuit. *In re Friedberg*, 08-bk-51245 (JAM), Dkt. 1848 [audio recording of hearing]. The Court agrees.

"[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court. This test is stricter than Article III's 'injury in fact' test, and its stringency is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (internal quotations and

7

citations omitted). Relatedly, a chapter 7 debtor "has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000).

The May 3, 2013 settlement stipulated that Trustee Neier would receive no direct fees from the Estate, Trustee's Mot. to Approve Settlement, *In re Friedberg*, 08-bk-51245 (JAM), Dkt. 1359 at 4, and that Ivey, Barnum & O'Mara, LLC would receive up to $630,000 from the estate. *Id*. Following that settlement statement, more than $18 million in creditors' claims were allowed by Trustee Neier but just over $2 million in claims were paid. Chapter 7 Trustee's Final Account and Distribution Report at 2. Georgia Capital, for instance, was allowed to claim more than $5 million, but was paid just $46,208.80. *Id*. at 7.

Given the shortfall of the Estate, Appellant lacks a pecuniary interest in the settlement or the claims paid at the close of the Estate. In essence, Appellant stands at the end of a long line of potential payees owed millions of dollars. *Id*. Even if the disbursements challenged by Appellant were reduced or eliminated, he would not receive the balance of the Estate. Instead, that balance would go to remaining creditors such as Georgia Capital. For this reason, Appellant is not a party aggrieved and does not have standing to challenge the settlement agreement or final trustee's accounting as accepted by the Bankruptcy Court.

Even if Appellant had standing to appeal the disbursements, he would be barred from that appeal by prior district court and Second Circuit rulings, on the merits, on this very issue.

The doctrine of *res judicata*, or claim preclusion, dictates that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same

cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979). The related doctrine of "[c]ollateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a 'full and fair opportunity to litigate . . . in [a] prior proceeding and where the decision of the issue was necessary to support a valid and final judgment on the merits in the first action." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (internal citations and quotations omitted). "The doctrines of *res judicata* and collateral estoppel protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Id*. at 644, *quoting Parklane Hosiery Co.*, 439 U.S. at 326.

Appellant contested the May 3, 2013 settlement and lost at both the district court level and at the Second Circuit. *In re Friedberg*, 3:13-cv-01856 (AVC), Dkt. 22; *In re Friedberg*, 634 Fed. App'x at 335. The final amount paid to Trustee Neier was $0.00; the final amount paid to her firm was $623,067.33. Chapter 7 Trustee's Final Account and Distribution Report, id., Dkt. 1798 at 4–5. The amount paid to Ivey, Barnum & O'Mara, LLC at the close of the Estate was less than stipulated in the settlement approved by the Bankruptcy Court, as upheld by the district court and Second Circuit.

In the hearing on Appellant's motion to compel Trustee Neier and Ivey, Barnum & O'Mara, LLC to return their payments and fees to the estate, Judge Manning explained to Appellant that this issue had already been litigated before a district court and the Second Circuit. *Id.*, Dkt. 1848 [audio recording of hearing]. She then concluded that there was "nothing left to do" for Appellant. The Court agrees.

9

Under the doctrine of *res judicata* or collateral estoppel, Appellant is estopped from challenging the fees paid to Ivey, Barnum & O'Mara, LLC by the Second Circuit's 2016 decision. *In re Friedberg*, 634 F. App'x 333. The Second Circuit's decision concerned the same parties and the issue of payment to Ivey, Barnum & O'Mara, LLC, as that payment was part of the settlement agreement. *Id*. The Second Circuit reviewed the relevant law concerning Chapter 7 bankruptcies, and found that Appellant was not a "party in interest" because the amount available for distribution—roughly $2 million—fell far short of the allowed creditor claims. *Id*. at 334.

The Court now reviews the Bankruptcy Court's conclusions of law de novo. *In re Charter Commc'ns, Inc*., 691 F.3d 476, 482-83. The Bankruptcy Court correctly determined that, as a matter of law, Appellant was estopped from challenging the disbursement to Ivey, Barnum & O'Mara, LLC on account of the Second Circuit's decision, on the merits, regarding the settlement agreement, which stipulated the contested payments. For this reason, the Court affirms the Bankruptcy Court's denial of Appellant's motion for disgorgement of funds from Ivey, Barnum & O'Mara, LLC.

### 2. Motion to Compel Bankruptcy Trustee Neier to Turn Over All Books, Records, Emails, Telephone Logs, and Tax Returns

Appellant largely seeks materials related to tax returns or tax payments. *In re Friedberg*, 08-bk-51245 (JAM), Dkt. 1834 at 2. At the June 6, 2017 hearing, Judge Manning found she could offer Appellant no relief because all relevant documents are on the docket. *Id*., Dkt. 1848 [audio recording of hearing]. The Court agrees.

The docket associated with this case comprises 1,920 entries. *Id*. Those entries include property sales records, *e.g., id*., Dkt. 917 (reporting that 28 Bear Mountain Bridge Road was sold

for $2,300,000), logs of Trustee Neier's work, e.g., Statement of Professional Services Rendered, *id.*, Dkt. 908-2, and Trustee Neier's motions to compel Appellant or his agents to turn over Appellant's tax records to the Estate, *e.g.*, Mot. for Examination of and Production of Documents by Deborah Chan and Chan's Bookkeeping and Tax Service, *id.*, Dkt. 976. The docket also indicates that, on or before June 14, 2012, the Estate's retained accountant, Richard Finkel of Blum Shapiro, allegedly explained to Appellant that minimal records had been produced through the bankruptcy process, and that such records would be insufficient to support an accurate tax return. Obj. to Mot. for Turnover of Tax Records, *id.*, Dkt. 1128 ¶ 2. Trustee Neier's final report and accounting lists a tax payment to the Town of Cortlandt in the amount of $215,000, *id.*, Dkt. 1798 at 14, and a tax payment to New York state in the amount of $91,027.06. *Id.* at 16.

The Court reviews the Bankruptcy Court's factual findings for clear error. *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012). After a review of the Bankruptcy Court docket and Appellant's pleadings, the Court finds no clear error in the Bankruptcy Court's determination that Trustee Neier had placed the relevant records in her possession on the docket. *In re Friedberg*, 08-bk-51245 (JAM), Dkt. 1848 [audio recording of hearing]. Additionally, there is no evidence in the record to support a finding that Trustee Neier compiled these documents into a physical book or record that could be handed over to Appellant.

Because the Bankruptcy Court committed no clear error, the Court affirms the Bankruptcy Court's denial of Appellant's motion to compel Trustee Neier to turn over all books, records, emails, telephone logs, and tax records.

### IV. CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the Bankruptcy Court's orders.

The Clerk of the Court is respectfully requested to close the file.

Given the numerous appeals in this bankruptcy case, as described above, Appellant is ordered to attach the Second Circuit's decision regarding his lack of standing, *In re Friedberg*, 634 F. App'x 333 (2d Cir. 2016), to any future appeals of this bankruptcy case filed in the District of Connecticut.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of January, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE